IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GEORGE L. MOST, JR.,

                Petitioner,

v.                                                                                  Case No. 20-cv-00493-NJR

R. WATSON,
J. GOMRIC, and
R. O'GARA,

                Respondents.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner George Most, a detainee[1] at the St. Clair County Jail, filed this habeas petition pursuant 28 U.S.C. § 2241. Most is asking for immediate release while he awaits sentencing. He claims that the outbreak of the coronavirus has caused an unconstitutional delay in the scheduling of his sentencing hearing and that while he awaits his hearing, he is being held in unconstitutional conditions at St. Clair County Jail due to the lack of safety measures. Included in his petition and his Motion for Leave to Proceed *in forma pauperis* are requests for a temporary restraining order and/or injunctive relief. (*See* Doc. 1, 2, 8).

Rule 4 of the Rules Governing Section 2254 cases in United States District Courts provides that upon preliminary consideration by the district court judge, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 1(b) of those Rules gives this Court the authority to apply the rules to other

---

[1] "Final judgment in a criminal case means sentence. The sentence is the judgment." *Burton v. Stewart,* 549 U.S. 147, 156 (2007) (internal citations and quotations omitted). Because a judgment against Most has not yet been entered, as he has not yet been sentenced, he is a pretrial detainee, and Section 2241 is the appropriate vehicle for challenging his detention.

Page 1 of 7

habeas cases.[2]

## THE PETITION

Most claims he has been in custody since he was arrested on November 14, 2019. (Doc. 1). His bail was set at $100,000, which he contends is disproportionally high. He pled guilty to attempted burglary on March 6, 2020. Although his sentencing hearing was originally set for April 17, 2020, Most is still awaiting sentencing at the St. Clair County Jail.

On May 2, 2020, he was taken to Bellville Memorial Hospital for respiratory distress and heightened blood pressure. At the hospital, x-rays were taken, and he was tested for COVID-19. Most was diagnosed with bronchitis. Although his blood pressure remained high, he was discharged and taken back to the St. Clair County Jail with hospital orders to be quarantined for fourteen days.

At the St. Clair County Jail, Most was not quarantined, he was told to dispose of his mask, and he was placed in the infirmary with five other inmates. On May 5, 2020, after seeing the jail's doctor, he was released from the infirmary to the workers' unit. In this unit, Most is a janitor and is in close proximity to other detainees. The doctor later told Most that the COVID-19 test was negative, but Most never saw the test results. As of May 10, 2020, Most states he still has COVID-19 symptoms—respiratory and congestion issues—and uses his rescue inhaler more frequently.

Because his sentencing hearing continues to be postponed, Most asks for release on bond while awaiting sentencing. He argues that because of the pandemic, detainees, such as himself, who cannot afford their bail are forced to wait long periods of time in the St. Clair County jail for their criminal hearings, which violates his due process and equal protection

---

[2] Because the only proper Respondent is the official who has custody of Petitioner Most, the Court will dismiss Respondents Gomric and O'Gara. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts; *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

rights. Most further argues that he has no way to protect himself from infection while at the St. Clair County Jail, where inmates are packed in barracks-styled dorms, all facilities are communal, and the ventilation system is out of date. Although cleaning is performed more regularly, this is not enough. St. Clair County Jail also has not implemented quarantine or social distancing procedures, and inmates are not given personal protective equipment ("PPE"). Most states that he is 56 years old, overweight, has high blood pressure, and bronchitis. In light of these preexisting medical conditions, the violations of his due process rights, and his nonviolent probational offense he should be released.

## DISCUSSION

First, the Court must address whether Most's claims are properly brought pursuant to Section 2241 or whether they should be more appropriately brought as a civil rights action under 28 U.S.C. § 1983. Most titles his petition "Emergency Petition for Temporary Restraining Order and or Injunctive Relief or, also Habeas Relief Pursuant to 28 U.S.C. § 2241" and asks for injunctive relief in the form of release based on unconstitutional conditions of confinement and pursuant to Section 2241. Generally, the Seventh Circuit has expressed a "long-standing view that habeas corpus is not a permissible route for challenging prison conditions[,]" when the conditions of confinement do not have "even an indirect effect on the duration of punishment[.]" *Robinson v. Sherrod*, 631 F.3d 839, 841 (7th Cir. 2011). "But the Seventh Circuit has also noted that 'the Supreme Court [has] left the door open a crack for prisoners to use habeas corpus to challenge a condition of confinement.'" *Mays v. Dart*, No. 20 C 2134, 2020 WL 1812381 at *6 (N.D. Ill. Apr. 9, 2020) (quoting *Robinson*, 631 F.3d at 840). Because Most is stating that his continuing confinement is unconstitutional due to the conditions caused by the coronavirus pandemic, the Court will review his habeas corpus petition pursuant to Rule 4. *See Mays*, 2020 WL 1812381 at *6 (finding that detainees'

conditions of confinement claims do bear on the duration of their confinement and "they are not the sort of claims that are, or can be, appropriately addressed via a claim for damages."); *Ruderman v. Kolitwenzew,* No. 20-cv-2082, 2020 WL 2449758 at *7 (C.D. Ill. May 12, 2020) ("Courts across the country addressing similar [conditions of confinement] claims of civil immigration detainees during the COVID-19 pandemic have found that such a claim can proceed in a habeas corpus petition."); *Swain v. Junior,* 20-cv-21457-KMW, 2020 WL 2078580 at *20 (S.D. Fla. Apr. 29, 2020) (the Eleventh Circuit has suggested that if no prison facility is available to meet constitutionally required standards then habeas relief maybe available).

Section 2241 allows a pretrial detainee to bring a habeas corpus petition, but this ability is limited by the policy of federal courts not to interfere with pending state criminal prosecutions except in special circumstances. *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484 (1973); *Younger v. Harris,* 401 U.S. 37, 43 (1971); *Sweeney v. Bartow*, 612 F.3d 571, 573 (7th Cir. 2010); *United States v. Castor*, 937 F.2d 293, 296–97 (7th Cir. 1991); *Neville v. Cavanagh*, 611 F.2d 673, 675 (7th Cir. 1979). Under the abstention doctrine outlined in *Younger*, federal courts must abstain from interfering with pending state criminal proceedings so long as the individual has the opportunity to raise his federal claims in state court and no exceptional circumstances exist. *Olsson v. Curran*, 328 F. App'x 334, 335 (7th Cir. 2009) (citing *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007)). Exceptional circumstances have been found in instances where irreparable damage would occur, such as prosecutorial harassment and bad faith or speedy trial and double jeopardy claims, but only where the petitioner has first exhausted his available state court remedies. *Id.*; *Braden*, 410 U.S. at 489-92; *Younger*, 401 U.S. at 49; *Stroman Realty, Inc.,* 505 F.3d at 662; *Neville*, 611 F.2d at 675.

Most does not allege that he has been denied an opportunity to raise his constitutional claims in state court, but does include copies of motions for emergency bond that he has filed

in state court, indicating he has attempted to exhaust his remedies within the state courts. (*See* Doc. 2). Not only is it not apparent whether he has exhausted his state court remedies, but given that Most claims he is at an elevated risk of contracting coronavirus due to underlying conditions it is also not clear whether exceptional circumstances exist. Based on the limited record, the issue of exhaustion will require further briefing. Accordingly, the Court concludes that the petition survives preliminary review under Rule 4.

### TEMPORARY RESTRAINING ORDER OR INJUNCTION

As part of the petition, Most includes a request a temporary restraining order ("TRO") or injunctive relief. A TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days. *See* FED. R. CIV. P. 65(b)(2). A TRO may issue without notice: only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:   (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Comm'r of Ind.*

*State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Without expressing any opinion on the merits of the underlying petition, the Court concludes that a TRO should not be issued in this matter. The petition does not set forth specific facts demonstrating the likelihood of immediate and irreparable harm that requires an immediate release of Most *before Respondent Watson can be heard*. As such, a TRO is not warranted, and the request is **DENIED**. Nonetheless, because Most claims to have heightened vulnerability to coronavirus, which can result in severe health consequences or death, the Court will direct Respondent Watson to respond to the request for injunctive relief and the petition in an expedited fashion.

## DISPOSITION

**IT IS HEREBY ORDERED** that Respondent **Watson** shall answer or otherwise plead on or before **June 17, 2020.**[3] The response or pleading **SHALL** address the request for a preliminary injunction. This preliminary order to respond does not preclude the Government from raising any objection or defense it may wish to present.

The Clerk of Court shall prepare for **Watson**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Petition, the Motion for Leave to Proceed *in forma pauperis*, and this Memorandum and Order to **Watson's** place of employment as identified by Most. If a **Watson** fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on **Watson**, and the Court will require **Watson** to pay the full costs of formal service, to the extent authorized by the Federal Rules

---

[3] The response date Ordered here is controlling. Any date that the Case Management/Electronic Case Filing ("CM/ECF") system should generate in the course of this litigation is a guideline only. *See* SDIL-EFR 3.

of Civil Procedure.

The Clerk of Court is **DIRECTED** to **TERMINATE** from the docket **J. Gomric** and **R. O'Gara**.

Most is **ADVISED** of his continuing obligation to keep the Clerk of Court (and each opposing party) informed of any change in his whereabouts during the pendency of this action. This notification shall be done in writing and not later than seven days after a transfer or other change in address occurs. Failure to provide such notice may result in dismissal of this action. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:   June 1, 2020

                                                                                    _____
                                                                                    **NANCY J. ROSENSTENGEL**
                                                                                    **Chief U.S. District Judge**